Alan Nahmias, Esq., State Bar No. 125140
Michael E. Bubman, Esq, State Bar No. 143468
MIRMAN, BUBMAN & NAHMIAS
163133 Ventura Blvd, Suite 1175
Encino, CA 91436
Telephone: (818) 451-4600
Facsimile: (818) 451-4620
Email: anahmias@mbn.law; mbubman@mbn.law

Counsel to *ENTERPRISE BANK & TRUST,*
*a Missouri Trust Company with Banking Powers*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>DUPLEX AT SLEEPY HOLLOW, LLC,<br><br>  Alleged Debtor and Debtor in Possession.<br><br>---<br><br>☐ Affects Duplex At Sleepy Hollow, LLC<br>☐ Affects 777 at Laguna, LLC<br>☐ Affects Cliff Drive Properties DE, LLC<br>☐ Affects Laguna Festival Center, LLC<br>☐ Affects 694 NCH Apartments, LLC<br>☐ Affects Retreat at Laguna Villas, LLC<br>☐ Affects 891 Laguna Canyon Road, LLC<br>☐ Affects Heisler Laguna, LLC<br>☐ Affects Sunset Cove Villas, LLC<br>☐ Affects Laguna Arts District Complex, LLC<br>☒ Affects All Debtors | Case No. 8:35-bk-12892-SC<br><br>Involuntary Chapter 11<br><br>(Jointly Administered with Case Nos.:<br>8:25-bk-12893-SC;<br>8:25-bk-12894-SC;<br>8:25-bk-12895-SC;<br>8:25-bk-12896-SC;<br>8:25-bk-12898-SC;<br>8:25-bk-12899-SC;<br>8:25-bk-12900-SC;<br>8:25-bk-12901-SC; and<br>8:25-bk-12902-SC)<br><br>MOTION FOR RELIEF FROM TURNOVER UNDER AND COMPLIANCE WITH 11 U.S.C. § 543 BY RECEIVER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>[Filed Concurrently with Declaration of Stephen J. Donell; Declaration of Jonathan Hustedt; Declaration of Alan I. Nahmias Request for Judicial Notice]<br><br>Date:       To Be Determined<br>Time:       To Be Determined<br>Courtroom:  5C<br>            411 W. Fourth Street<br>            Santa Ana, CA 92701 |

-1-

1    Pursuant to Section 543(d)(1) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Enterprise Bank & Trust, a Missouri Trust Company with Banking Powers ("Enterprise Bank"), secured creditor of each of the above-captioned, alleged debtors (collectively, the "Alleged Debtors" and each an "Alleged Debtor") in their involuntary chapter 11 bankruptcy cases (collectively, "Bankruptcy Cases" or "Cases"), by and through undersigned counsel, hereby provides the following Memorandum of Points and Authorities in support of this *Motion for Relief from Turnover Under and Compliance With 11 U.S.C. § 543 by Prepetition Receiver* ("Motion").

By Order dated October 7, 2025 (the "Receivership Order"), the Orange County Superior Court (the "State Court") granted the motion of Enterprise Bank, a secured lender to each of the Alleged Debtors, to appoint a rents, issues and profits receiver over each of the properties owned by each of the Alleged Debtors that constitute Enterprise Bank's collateral (the "Properties"). By the Receivership Order, the State Court appointed Stephen J. Donell (the "Receiver") as receiver to take possession of, manage and preserve the Properties. A true and correct copy of the Receivership Order, which includes an attachment that identifies each of the Properties, is attached to the Declaration of Stephen J. Donell as **Exhibit 1** and incorporated herein by this reference.

Enterprise Bank was able to obtain the Receivership Order after previously seeking and obtaining relief from the automatic stay in previous voluntary Chapter 11 bankruptcy cases filed by the Alleged Debtors and their affiliates (collectively, the "MOM CA Debtors") in or about February and March, 2025 (the "MOM CA Cases"), in the United States Bankruptcy Court, District of Delaware (the "Delaware Bankruptcy Court"). Enterprise obtained relief from stay in each of the ten cases via an Order entered July 15, 2025 (the "MOM CA RFS Order"). By August 18, 2025, however, each of the ten MOM Cases, along with twelve other related cases,[1] were dismissed by the Delaware Bankruptcy Court.

The involuntary chapter 11 petitions commencing these Bankruptcy Cases were filed on

---

[1] Further detail as to the twenty-two related Chapter 11 Bankruptcy Cases that were jointly administered before the Honorable Brendan L. Shannon, United States Bankruptcy Judge for the District of Delaware, is provided in this Motion at page 9 and in footnote 9 specifically.

-2-
MOTION FOR RELIEF FROM TURNOVER UNDER AND COMPLIANCE
WITH 11 U.S.C. § 543 BY RECEIVER

870878.2

October 15, 2025, little more than two months after the MOM CA Cases were dismissed by the Delaware Bankruptcy Court, one week after Enterprise Bank had obtained the appointment of the Receiver, and within one half hour of Enterprise Bank's ten scheduled foreclosure sales with respect to each of these properties. These Cases, filed by the petitioning creditors in bad faith, with all Alleged Debtors subsequently determined by this Court to be affiliates of each other (see S*ua Sponte Order Administratively Consolidating Related Involuntary Chapter 11 Cases* entered October 17, 2025 [Docket 6], for the dual inappropriate purposes of hindering, delaying and preventing the Receiver from taking control of, and Enterprise Bank from foreclosing upon, the ten Properties.

As this Court will recall, the same petitioning creditors have tried this particular stratagem twice before with other affiliates of these Alleged Debtors, first with Tesoro Redlands DE, LLC ("Tesoro") and then with Aryabhata Group LLC ("Aryabhata").[2] In each instance, they were unsuccessful, with this Court quickly finding that **the filing of the bankruptcy petition by the petitioning creditors "was part of a scheme to hinder, delay, or defraud creditors that involved…[m]ultiple bankruptcy cases affecting the Property" and that the alleged debtor in each of the cases was involved in the scheme**. In each instance, the Court granted the motion of the prior alleged debtor's secured creditor for relief from stay, on an *in rem* basis. Further, in each of those two instances, at least two of the involuntary petitioning creditors were the same petitioning creditors that participated in the latest ten involuntary filings now before this Court.

Undeterred by this Court's rulings in the prior failed involuntary cases of Tesoro and Aryabhata, the Petitioning Creditors, whistling past the graveyard, and with new counsel in hand, seem to believe the third time will be the charm. This Court must not allow that to occur, and should take decisive action to stop these parties from taking any further harmful or abusive actions.

Enterprise Bank is in the process of preparing a separate motion for relief from the automatic stay to allow it to proceed with its nonjudicial foreclosures of the Properties, and expects to bring

---

[2] Like the Alleged Debtors, Tesoro and Aryabhata were among the debtors in the now-dismissed Delaware Cases. Each faced a secured lender that was on the verge of foreclosing on its real property collateral.

-3-

MOTION FOR RELIEF FROM TURNOVER UNDER AND COMPLIANCE
WITH 11 U.S.C. § 543 BY RECEIVER

870878.2

that motion (the "Stay Relief Motion") imminently. In the interim, Enterprise Bank asks that the Court grant this Motion and excuse the Receiver from his obligations to turnover and otherwise comply with his obligations under Bankruptcy Code § 543(b) and to authorize the Receiver to continue to fulfill his responsibilities to manage, operate, oversee and preserve the Properties.

The Motion is supported by the attached Memorandum of Points and Authorities; the Declaration of Stephen J. Donell (the "Donell Declaration"), the Declaration of Michael E. Bubman (the "Bubman Declaration") and the Declaration of Jonathan Hustedt (the "Hustedt Declaration"), the Request for Judicial Notice submitted concurrently herewith ("RJN"); and all papers and documents of record in these Bankruptcy Cases.

Dated: November 4, 2025

MIRMAN, BUBMAN & NAHMIAS

By: _____
Alan Nahmias
Attorneys for *ENTERPRISE BANK & TRUST,
a Missouri Trust Company with Banking
Powers*

# MEMORANDUM OF POINTS AND AUTHORITIES[3]

## I. INTRODUCTION

On October 9, 2025, this Court held a hearing on a motion for relief from stay filed by Pacific High Yield 1, LLC. ("Pacific HY1")[4] in the involuntary chapter 11 case filed by the petitioning creditors against Aryabhata Group LLC, Case No. 8:25-bk-12554-SC. At the hearing, the Court excoriated counsel to Aryabhata's petitioning creditors,[5] finding that they had filed their involuntary petition in bad faith. "The Court finds that ... there is significant bad faith in this matter." Transcript of Hearing re Motion For Relief From Stay, dated October 9, 2005 ("Aryabhata RFS Hrg. Transcript"), 22:24-25.[6] The Court went on to state:

> The Movant argues the following supported bad faith finding under the Little Creek factors: Property is Debtor's only asset per schedules. This bankruptcy case was commenced by Debtor's insiders with the sole purpose of forestalling Movant's efforts to foreclose. Movant is the central creditor in this case and purported Petitioning Creditors, to the extent they are legitimate creditors, are junior to the Movant and wholly unsecured perhaps. The wrongdoing of the insider seems to be well documented. It certainly is to this Court's view. This case -- this case is not filed in good faith.

Aryabhata RFS Hrg. Transcript, 23:11-21

On October 9, 2025, this Court entered its order in the Aryabhata case terminating and annulling the automatic stay retroactively to the bankruptcy petition date (the "Aryabhata RFS Order"). The Aryabhata RFS Order states, in part, that

> [t]he filing of the bankruptcy petition was part of a scheme to hinder, delay, or

---

[3] Capitalized terms used herein that are not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[4] Pacific HY1 was the senior secured creditor in that case like Enterprise Bank is in these Cases.

[5] The petitioning creditors of Aryabhata were Coastline Loans, LLC ("Coastline Loans"), Specialty DIP LLC ("Specialty DIP") and Vierergruppe Management, Inc. ("Vierergruppe"). The petitioning creditors of the lead Alleged Debtor (the "Petitioning Creditors") here consist of Specialty DIP, Vierergruppe, Coastline Santa Monica Group, LLC ("Coastline SMG"; and collectively with Coastline Loans, "Coastline"), an affiliate of Coastline Loans, and Moises Camacho. With the exception of Camacho, the Petitioning Creditors are the same as those for Aryabhata. RJN, Exh. 1.

[6] Attached to the Nahmias Declaration as **Exhibit 1** is a true and correct copy of the relevant pages of the Aryabhata RFS Hrg. Transcript.

-5-

MOTION FOR RELIEF FROM TURNOVER UNDER AND COMPLIANCE
WITH 11 U.S.C. § 543 BY RECEIVER

870878.2

defraud creditors that involved…[m]ultiple bankruptcy cases affecting the Property….The court makes…a finding that the Debtor was involved in this scheme.

Aryabhata RFS Order, Section 3.d., RJN, Exh. 2.[7]

On October 15, 2025, not even a full week after the entry of the Aryabhata RFS Order, the Petitioning Creditors in these ten involuntary cases, the very entities twice admonished by this Court as bad faith petitioning creditors, in complete disregard of the Court's prior rulings and findings in the Tesoro and Aryabhata involuntary chapter 11 bankruptcies and only minutes before Enterprise Bank's duly-noticed foreclosure sales, filed involuntary petitions against the Alleged Debtors.

These Cases are no less egregious than the Tesoro and Aryabhata bankruptcy cases (collectively, the "Prior Bad Faith Cases"), and perhaps even more audacious, if for no reason other than the fact that the Petitioning Creditors and their counsel saw fit to file ten cases at one time, as opposed to only one. These Cases are part of the same ongoing scheme orchestrated by the Alleged Debtors' insiders in the Prior Bad Faith Cases to stop scheduled foreclosure sales of properties of the MOM CA Debtors. Because this Court found that the Prior Bad Faith Cases were part of a blatant scheme to hinder, delay and defraud creditors, this Court not only granted relief from stay to the senior secured lenders there, but also granted *in rem* relief under section 362(d)(4). Indeed, in the just-dismissed Aryabhata case, this Court also annulled the automatic stay to ensure that the upcoming foreclosure sale that was to be held later that day did not run afoul of the automatic stay to the extent that the Order granting the secured lender relief from stay had not yet been entered as

---

[7] The Aryabhata involuntary case was not the first involuntary case filed by Petitioning Creditors against a MOM CA Debtor. On August 21, 2025, a mere three days after the MOM CA Cases were dismissed by the Delaware Bankruptcy Court, two of the Petitioning Creditors, Vierergruppe and Coastline, along with a third alleged creditor, filed with this Court an involuntary petition against MOM CA Debtor, Tesoro Redlands DE RJN, Exh. 3. Preferred Bank, the senior secured lender of Tesoro, moved for relief from stay on grounds that the involuntary petition was filed in bad faith. On September 11, 2025, this Court issued an order granting the relief from stay motion (the "Tesoro RFS Order"). As with the subsequent Aryabhata order, the Tesoro RFS Order states:

> "[t]he filing of the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors that involved…[m]ultiple bankruptcy cases affecting the Property….The court makes…a finding that the Debtor was involved in this scheme."

Tesoro RFS Order, Section 3.d., RJN, Exh. 4, page 2, paragraph 3.d.

of the time the sale had been scheduled.

The Petitioning Creditors and the insiders of the Alleged Debtors once again have turned to a recycled playbook of bad faith tactics already evidenced in the Prior Bad Faith Cases; this time to seek to stop Enterprise Bank's imminent foreclosures of the Properties and to remove the Receiver appointed as custodian to operate, manage and preserve the Properties.

While Enterprise Bank prepares to bring its Motion for Relief from the Automatic Stay before this Court, it requests that this Court issue an order excusing the Receiver from turning over to the Alleged Debtors, who have yet to appear in any of these Cases, and to allow him to operate the businesses being conducted on the Properties, in addition to authorizing the Receiver to take those actions needed to fulfill his mandate to manage, oversee, operate and preserve the Properties. In light of the needs of the Properties and the businesses being operated thereon, Enterprise Bank seeks to avoid interruption or cessation of the Receiver's services with respect to the Properties pending Enterprise Bank's nonjudicial foreclosure sales of the Properties (assuming Enterprise Bank is granted relief from stay to do so, or the automatic stay is, in the alternative, annulled).

## II. STATEMENT OF FACTS

### A. Enterprise Bank's Loans to the Alleged Debtors and Deeds of Trust Against the Properties

Enterprise Bank[8] is the senior lender to the Alleged Debtors, each of which is a special purpose entity owning real estate assets that were pledged to Enterprise Bank as part of its security for seven loans made to the Alleged Debtors. Contemporaneous with each loan, Enterprise Bank was granted a deed of trust (each a "Deed of Trust"; and collectively "Deeds of Trust") against the Properties owned by the Alleged Debtors. Enterprise Bank recorded each such Deed of Trust with the Orange County Recorder's Office. A list of the Properties pledged to Enterprise Bank to secure the loans received by the Alleged Debtors, including the outstanding loan amount as of October 31,

---

[8] Each of the loans referenced herein were originally made by First Choice Bank ("FCB") on June 7, 2021. Shortly thereafter, on July 22, 2021, FCB was merged into Enterprise Bank, the successor entity and current lender to the Alleged Debtors. Hustedt Declaration, paragraph 2. The merged entity is referred to hereafter as Enterprise Bank.

-7-
MOTION FOR RELIEF FROM TURNOVER UNDER AND COMPLIANCE
WITH 11 U.S.C. § 543 BY RECEIVER

870878.2

2025 (including interest, fees, costs, advances), corresponding Deed of Trust recording instrument numbers for each Deed of Trust recorded by Enterprise Bank to perfect its security interest in the Properties is as follows:

| Borrower/Guarantor/Pledging Entity Name | Outstanding Balance as of October 31, 2025 | Property Pledged | Deed of Trust Recording No. |
|---|---|---|---|
| Duplex at Sleepy Hollow, LLC | $2,058,645.62 | 689 Sleepy Hollow Lane, Laguna Beach, CA 92651 | 2021000382123 |
| 777 at Laguna, LLC[9] | $29,080,968.90 | 777 Laguna Canyon Road, Laguna Beach, CA | 2021000382118 |
| 891 Laguna Canyon Road, LLC | | 891 Laguna Canyon Road, Laguna Beach, CA | 2021000382118 |
| Laguna Festival Center, LLC | | 805-859 Laguna Canyon Road, Laguna Beach, CA | 2021000382118 |
| Laguna Art District Complex LLC | | 775 Laguna Canyon Road, Laguna Beach, CA | 2021000382118 |
| Cliff Drive Properties DE, LLC | $4,623,369.38 | 150 & 154 Cliff Drive and 151 & 153 Cedar Way, Laguna Beach, CA 92651 | 2021000382060 |
| Heisler Laguna, LLC | $18,940,169.14 | 305, 331, 345, 353 & 369, 385 and 397 N. Coast Highway, Laguna Beach, CA 92651 | 2021000382130 |
| 694 NCH Apartments, LLC | $4,484,310.65 | 694 N. Coast Highway, Laguna Beach, CA | 2021000382072 |
| Retreat at Laguna Villas, LLC | $7,125,574.75 | 729 Ocean Front, Laguna Beach, CA | 2021000382785 |
| Sunset Cove Villas, LLC | $12,037,471.76 | 683 Sleepy Hollow Lane, Laguna Beach, CA | 2021000382135 |

---

[9] The loan to Alleged Debtor 777 at Laguna, LLC is guaranteed by three Alleged Debtors, 891 Laguna Canyon Road, LLC Laguna Festival Center, LLC, and Laguna Art District Complex LLC, each of which also pledged their properties as collateral to Enterprise Bank.

-8-
MOTION FOR RELIEF FROM TURNOVER UNDER AND COMPLIANCE
WITH 11 U.S.C. § 543 BY RECEIVER

870878.2

**B. The Defaults**

Each of the Alleged Debtors defaulted under the terms of its respective loans from Enterprise Bank by, among other things, failing to (a) pay property tax bills for 2023 and (b) make the principal and interest payments on the loans ("Defaults"). By letters **dated November 21, 2024 and November 26, 2024**, Enterprise Bank notified the Alleged Debtors of their Defaults and demanded cure. By letters dated **December 23, 2024**, Enterprise Bank notified the Alleged Debtors of their failure to cure and the implementation of interest at the default rate. Despite the demand, the Alleged Debtors failed to pay the amounts due and owing under their respective promissory notes in favor of Enterprise Bank or to otherwise cure the Defaults. Hustedt Declaration.

On or about **February 10, 2025**, Enterprise Bank appointed S.B.S. Trust Deed Network ("SBS") as successor trustee under each Deed of Trust. **On February 13, 2025**, SBS recorded Notices of Default and Election to Sell Under Deed of Trust in the Official Records of the Orange County Recorder's Office (each an "NOD") with respect to each Deed of Trust.

**C. The Delaware Bankruptcies Followed by the Prior Bad Faith Cases**

As discussed above, in or about February and March 2025, twenty-two (22) MOM CA Debtors, inclusive of the ten Alleged Debtors, filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.[10] The Delaware Bankruptcy Court ordered the Delaware Cases jointly administered under the lead case of MOM CA Investco LLC ("MOM CA"), Case No. 25-10321. RJN, Exh 5.

On August 18, 2025, after Enterprise Bank had obtained relief from stay to proceed with its request to conduct foreclosure sales in California as to each of the Properties, the Delaware

---

[10] The twenty-two MOM CA Debtors that voluntarily filed for Chapter 11 along with the last four digits of each MOM CA Debtor's federal tax identification number, were as follows: MOM CA Investco LLC [6263], MOM AS Investco LLC [6049], MOM BS Investco LLC [6180], Retreat at Laguna Villas, LLC [2046], Sunset Cove Villas, LLC [9178], Duplex at Sleepy Hollow, LLC [9237], Cliff Drive Properties DE, LLC [0893], 694 NCH Apartments, LLC [0318], Heisler Laguna, LLC [4709], Laguna Festival Center, LLC [4073], 891 Laguna Canyon Road, LLC [0647], 777 AT Laguna, LLC [8715], Laguna Art District Complex, LLC [8316], Tesoro Redlands DE, LLC [2764], Aryabhata Group LLC [7332], Hotel Laguna, LLC [9580], 4110 West 3rd Street DE, LLC [8641], 314 S. Harvard DE, LLC [2057], Laguna HI, LLC [6408], Laguna HW, LLC [9470], The Masters Building, LLC [6134], and 837 Park Avenue, LLC [3229].

1  Bankruptcy Court determined that the MOM CA Debtors failed to make any progress in liquidating
2  their properties, and entered an order dismissing all of the MOM CA Cases (the <u>MOM CA Dismissal
3  Order</u>"). RJN, Exh. 6. Rather than fully opposing the motion that sought the order dismissing the
4  MOM CA Cases, on June 30, 2025, the Debtors instead filed the *Debtors' Statement Regarding
5  Conversion* (the "<u>Statement</u>"). RJN. Exh. 7. The Statement made clear, among other things, that (i)
6  the MOM CA Cases were in complete turmoil, with parties Makhijani and Honarkar "warring"
7  against one another inside and outside of the MOM CA Cases, (ii) the MOM CA Debtors had
8  significant liquidity issues and could not obtain the Delaware Bankruptcy Court's approval of debtor
9  in possession financing that they considered essential, and (iii) the MOM CA Debtors were unable
10 to sell their properties. RJN. Exh. 7, pages 2-4. The MOM CA Debtors ultimately argued,
11 unpersuasively, that their cases should be converted and that their prepetition secured lenders be
12 granted relief from the automatic stay. RJN, Exh 7.

13      On August 21, 2025, only three days after the entry of the MOM CA Dismissal Order, the
14 Petitioning Creditors filed their first involuntary petition in the Central District of California against
15 Tesoro. On September 11, 2025, they filed their second involuntary petition against Aryabhata. Both
16 Prior Bad Faith Cases appear to have been filed solely to stop imminent foreclosures by Tesoro's
17 and Aryabhata's senior secured lender (Preferred Bank for Tesoro and Pacific HY1 for Aryabhata)
18 against their respective properties. Both cases were assigned to the same Judge that is now assigned
19 to all ten of these cases, the Honorable Scott C. Clarkson. In both prior involuntary cases, the Court
20 found each was filed by their petitioning creditors in bad faith. In that regard, the Court noted that
21 it appeared that the Tesoro and Aryabhata debtors were working with the principal petitioning
22 creditors (the Petitioning Creditors here) in an attempt to conjure up a further scheme by which to
23 hinder and delay the senior secured lenders' ability to pursue their foreclosure and other rights even
24 after the months of delay that had been obtained via the failed reorganization efforts of the MOM
25 CA Debtors in Delaware.

26      Among other information known regarding the Petitioning Creditors is the following:
27      **Specialty**. Specialty was the DIP lender in the MOM CA Cases. In the motion to approve

-10-
MOTION FOR RELIEF FROM TURNOVER UNDER AND COMPLIANCE
WITH 11 U.S.C. § 543 BY RECEIVER

870878.2

the DIP loan, the prior CRO of the MOM CA Debtors acknowledged that "Specialty DIP is an entity created by Mahender Makhijani ("<u>Makhijani</u>") and that the DIP loan will be funded by individuals or entities that have personally guaranteed some of the institutional loans secured by first priority deeds of trust against certain of the Debtors' properties. Makhijani is likely an insider." RJN, Exh. 8, at page 11. Multiple creditors objected to the DIP loan based on this insider relationship. The objection of Mohammad Honarkar and 4G Wireless, Inc. – the parties that successfully obtained dismissal of the Delaware cases – went on to more fully describe this insider relationship:

> The proposed DIP Lender is Specialty DIP LLC, which, according to the DIP Motion and the DIP Declaration, is an entity created by Mahender Makhijani (and others), who is one of the Continuum Parties and an insider of the Debtors. The DIP Term Sheet was signed on behalf of Specialty DIP LLC by Bhajneet Singh Malik as its "Manager." Mr. Malik is also one of the Continuum Parties, the sole member of MOM BS Investor (which holds 50% of the membership interests in Debtor MOM BS Investco LLC), and one of Continuum's largest investors, all as set forth in the Trustee Motion. As noted above, MOM BS Investor is now in chapter 11.
>
> As set forth in the Arbitration Award, and as discussed in the Trustee Motion, the Arbitrator specifically found that Mr. Makhijani, Continuum, and the Investor Debtors fraudulently induced (i) the Honarkar Parties' entry into the joint venture, (ii) violated California's forcible entry and detainer statutes, (iii) converted more than $35 million of the MOM Debtors' assets in at least six separate instances, and (iv) unjustly enriched himself from the MOM Debtors' assets.

RJN, Exh. 9, page 3, paragraph 9 and page 4, paragraph 10 (internal citations omitted)

A copy of the Arbitration Award referred to by the creditors is included in the RJN as Exhibit 10.

Further, as noted above, Bhajneet Singh Malik, the individual that signed the DIP Term Sheet as Specialty's manager, is the insider of the Debtors that guaranteed the DIP loan to the MOM CA Debtors. Bhajneet Singh Malik is also a guarantor of certain of the loans from Enterprise Bank and is personally a defendant in the State Court lawsuit filed by Enterprise Bank.

**Coastline**: Coastline was a purported petitioning creditor in each of the Prior Bad Faith Cases.

In the MOM CA Cases, the MOM CA debtor Duplex at Sleepy Hollow LLC disclosed an unliquidated and disputed junior secured debt to Coastline in the amount of $175 million. RJN, Exh. 11, at page 30, Item 2.2. Alarmingly, the arbitrator specifically found in the Arbitration Award that this purported debt was never funded:

-11-
MOTION FOR RELIEF FROM TURNOVER UNDER AND COMPLIANCE
WITH 11 U.S.C. § 543 BY RECEIVER

870878.2

As to the Coastline Loan deeds of trust, the MOM Parties executed those instruments on behalf of the subsidiary LLCs and thus encumbered assets of the MOM JV Entities. Coastline is owned and controlled by Andrew Stupin, one of Nano's founding shareholders and a repeat Makhijani investor, who also gave his initials to MOM AS JV. Though no proceeds from this loan were ever paid to the JV, many of the deeds of trust are still outstanding. Therefore, the Arbitrator finds proof of conversion of those assets based on the encumbrances placed on them to secure the unfunded Coastline Loan.

RJN, Exh. 10. at page 35 (internal citations omitted)

**Vieregruppe**: Vieregruppe, like Coastline, was a purported petitioning creditor in each of the Prior Bad Faith Cases. It also appears to be the management arm of the insiders' real estate venture as noted by the MOM CA Debtors in their bankruptcy schedules.

### C. Non-Judicial Foreclosure

As noted above, Enterprise Bank retained SBS to conduct non-judicial foreclosure sales on each of the Properties. Each of the Properties were scheduled for a non-judicial foreclosure sale noticed for 3:00 p.m. on October 15, 2025, to be conducted in the following order:

  a. TS # 2025-1164 (805-859 and Laguna Canyon Road)
  b. TS # 2025-1165 (775-793 Laguna Canyon Road)
  c. TS # 2025-1162 (777 and 22446 Laguna Canyon Road)
  d. TS # 2025-1163 (891 Laguna Canyon Road)
  e. TS # 2025-1166 (683 Sleepy Hollow Lane)
  f. TS # 2025-1169 (729 Ocean Front)
  g. TS # 2025-1168 (694 North Coast Highway)
  h. TS # 2025-1167 (305, 331, 345, 353, 369 and 397 N. Coast Highway)
  i. TS # 2025-1171 (150 Cliff Drive and 151 & 153 Cedar Way)
  j. TS # 2025-1170 (689 Sleepy Hollow Lane)

The sales were conducted between 3:13 and 3:52 p.m. At no time, including the moment up to commencement of each of the ten (10) sales, was anyone at SBS contacted or otherwise notified by anyone, of any bankruptcy filings having been commenced, voluntarily, involuntarily, or otherwise, against any of the title holders to any of the Properties.

Later that afternoon, at approximately 4:10 p.m., SBS did receive an email from an individual

identifying himself as Jason Brooks, shareholder at Buckhalter, which did not describe the actual filing of the involuntary petitions but, rather, attached copies of ten receipts, purportedly all from the United States Bankruptcy Court, simply identifying the time that each involuntary petition was purportedly filed. In summary, those receipts identify the filing times as follows:

    a. Duplex at Sleepy Hollow, LLC - 8:25-bk-12892 filed on 10/15/2025 at 2:28 p.m. PDT

    b. 777 At Laguna, LLC - 8:25-bk-12893 filed on 10/15/2025 at 2:32 p.m. PDT

    c. Cliff Drive Properties DE, LLC - 8:25-bk-12894 filed on 10/15/2025 at 2:36 p.m. PDT

    d. Laguna Festival Center, LLC – 8:25-bk-12895 filed on 10/15/2025 at 2:39 p.m. PDT

    e. 694 NCH Apartments, LLC - 8:25-bk-12896 filed on 10/15/2025 at 2:43 p.m. PDT

    f. Retreat at Laguna Villas, LLC – 8:25-bk-12898 filed 10/15/2025 at 2:47 p.m. PDT

    g. 891 Laguna Canyon Road, LLC - 8:25-bk-12899 filed on 10/15/2025 at 2:50 p.m. PDT

    h. Heisler Laguna, LLC - 8:25-bk-12900 filed on 10/15/2025 at 2:53 p.m. PDT

    i. Sunset Cove Villas, LLC - 8:25-bk-12901 filed on 10/15/2025 at 2:59 P.M. PDT;

    j. Laguna Art District Complex - 8:25-bk-12902 filed on 10/15/2025 at 3:02 p.m. PDT

To this day, counsel for Enterprise Bank has not been contacted by counsel for the Petitioning Creditors or counsel for any of the Alleged Debtors with respect to these matters.

### D. The State Court Action and Appointment of the Receiver

On July 15, 2025, the Delaware Bankruptcy Court entered the MOM CA RFS Order in favor of Enterprise Bank.

On August 15, 2025, Enterprise Bank filed its *Complaint For Breach of Promissory Note, Breach of Guaranty and Specific Performance of Deed of Trust and For Appointment of Receiver* in the State Court, naming as defendants, among others, each of the Alleged Debtors. Enterprise subsequently applied for the appointment of a receiver. On October 7, 2025, the State Court entered the Receivership Order appointing the Receiver as receiver over all ten of the Properties, granting the Receiver the power to, among other things, take possession of and manage the Properties, collect the income from the Properties, care for, preserve and maintain the Properties, list and market the

-13-
MOTION FOR RELIEF FROM TURNOVER UNDER AND COMPLIANCE
WITH 11 U.S.C. § 543 BY RECEIVER

870878.2

Properties for sale, and pay all costs and expenses associated with the Property. Donell Declaration, Exhibit "1".

The Receiver immediately stepped in to fulfill his duties pursuant to the Receivership Order. Since the petition dates for the Cases, however, the Receiver has not been able to undertake any actions necessary to fulfill his duties as receiver over the Properties and is now receiving alarming information, at least as to demands pertaining to certain of the Properties. Several are set forth in correspondence received by the Receiver from attorney Anne R. Beehler dated October 30, 2005, a true and correct copy of which is attached as Exhibit "2" to the Declaration of Stephen J. Donell, and incorporated by this reference as though fully set forth herein.. In it, Ms. Beehler states in part:

> "Further, My Laguna Stay has endured multiple demands and threats by Owner and its representatives—specifically, by Mr. Mahender Makhijani. After the court appointed you as the receiver on October 7, 2025, my client continued to receive demands to transfer funds associated with all the properties. For instance, on or around October 7, 2025, Mr. Jason Miller told my client that Mr. Makhijani demanded that my client provide to Owner all funds associated with these three properties and two other properties that were already under another receiverships,1 in violation of a court order. However, Mr. Makhijani, Mr. Miller, or any other representative of Owner did not provide working bank accounts or the documents requested by Lynnbrook, the third-party credit card processing company. These demands were accompanied with threats and extortionary text messages, including threats made against my client's family, by Mr. Makhijani. In these texts, it was further stated that if my client does not wire the funds (seemingly in violation of a court order), they would be reported to the DRE.[2] Lastly, as you are aware, on October 24, 2025, Mr. Ron Moses made demands to Streamline, a third-party property management software company, to transfer control of the properties' accounts to him, despite our multiple notices to Owner that the properties are under your receivership. Mr. Brandon Tran, counsel for Owner, repeated these demands to Streamline and my client on October 30, 2025.
>
> [2]. Alarmingly, this threat was reiterated by Owner's counsel, Brandon Q. Tran of Dhillon Law Group, in an email dated October 20, 2025."

While the statements in Ms. Beehler's letter do not constitute evidence in and of themselves, the conduct they describe is not inconsistent with other conduct allegedly exhibited by certain parties to those disputes.

### III. STATEMENT OF FACTS

**A. The Court Should Excuse Turnover under Section 543(b)(2)**

Section 543(b)(2) prohibits "custodians" with knowledge of the bankruptcy case from "mak[ing] and disbursement from, or tak[ing] any action in the administration of, property of the

-14-
MOTION FOR RELIEF FROM TURNOVER UNDER AND COMPLIANCE
WITH 11 U.S.C. § 543 BY RECEIVER

870878.2

debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property." 11 U.S.C. § 543(a). Section 543 also requires custodians to "deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property." 11 U.S.C. § 543(b)(1). A "custodian," as defined under the Bankruptcy Code, includes state court-appointed receivers such as the Receiver. 11 U.S.C. § 101(10).

Under Section 543(d)(1), however, this Court has discretion to excuse compliance with the requirements of Section 543(a), (b), or (c) "if the interests of the creditors…would be better served by permitting a custodian to continue in possession, custody, or control of such property." 11 U.S.C. § 543(d)(1).

Case law identifies three primary factors for determining whether the interests of creditors would be served by exempting a custodian from the requirements of Section 543(a) and (b):

    (1) whether there will be sufficient income to fund a successful reorganization;

    (2) whether the debtor will use the property for the benefit of creditors; and

    (3) whether there has been mismanagement by the debtor.

See In re Orchards Vill. Invs., LLC, 405 B.R. 341, 351-52 (Bankr. D. Or. 2009), citing Dill v. Dime Savings Bank, FSB (In re Dill), 163 B.R. 221, 225 (E.D.N.Y. 1994). The interests of the debtor are not part of the criteria in determining whether to apply Section 543(d). Dill, 163 B.R. at 225. Case law addressing Section 543(d) overwhelmingly arises in the context of chapter 11 where courts weigh the importance of the assets at issue in the debtor's ability to reorganize. See, e.g., In re KCC-Fund V, Ltd., 96 B.R. 237, 239-40 (W.D. Mo. 1989) (observing that the debtor's ability to "reorganize and to promulgate an acceptable plan of reorganization" is hampered "if debtor cannot have access to all of its assets" but exempting the custodian pursuant to Section 543(d) due to receiver's excellent management of neglected apartment properties); Dill, 163 B.R. at 226 (exempting receiver from Section 543(a) and (b) and considering impact on reorganization efforts). Under the three Orchards factors, turnover is not warranted in this case.

### 1. Successful Reorganization is Unlikely in this Case

The first factor—whether there will be sufficient income to fund a successful reorganization—weighs heavily against requiring the Receiver to turnover assets. Each of the Alleged Debtors failed to reorganize during the MOM CA Cases. The MOM CA Debtors admitted that they could not reorganize and advocated that, instead of dismissal, their cases be converted to cases under Chapter 7. They acknowledged that there would be no reorganization. Notwithstanding that request, the Delaware Bankruptcy Court still ordered the dismissal of all of the MOM CA Cases.

In the four months since the MOM CA Debtors argued that their cases should be converted rather than dismissed, the Alleged Debtors' situations have not improved, and the amounts owing to Enterprise Bank and other legitimate lenders holding liens against the Properties has only increased. The Alleged Debtors lacked sufficient resources and ability to maintain the Properties two months ago. They certainly are not any more capable of doing so today. Certainly, Enterprise Bank, which has been forestalled in its enforcement remedies since the MOM CA Debtors first filed their cases in Delaware, now holds significantly higher claims against all of the Properties than it did back in February 2025, meaning that the Properties have even less value to bankruptcy estates today than they once did (assuming they have any value beyond Enterprise Bank's secured claims at all, which Enterprise Bank does not believe to be the case). The Alleged Debtors are not better off today than they were when the MOM CA Cases were dismissed two months ago.

Furthermore, like the Prior Bad Faith Cases, these Bankruptcy Cases also have been filed in bad faith. That bad faith implicitly will undermine the proper administration of the Bankruptcy Cases and the interests of creditors. There is no set of likely circumstances in which the administration of these Bankruptcy Cases would benefit their creditors.

### 2.    Requiring Turnover Will Not Benefit Any of Debtor's Creditors

The second factor—whether the Alleged Debtors will use the Properties for the benefit of creditors—also weighs heavily against turnover because if the Alleged Debtors regain possession and control of the Properties and their operations, based on the history of the Alleged Debtors, there is a significant risk that the Properties will continue to loose value (regardless of any

MOTION FOR RELIEF FROM TURNOVER UNDER AND COMPLIANCE
WITH 11 U.S.C. § 543 BY RECEIVER

870878.2

speculative plans for improvement that the Alleged Debtors or Petitioning Creditors might make). If the Receiver is permitted to fulfill his mandated responsibilities, Enterprise Bank is hopeful that more value will not be lost to it pending its foreclosure on the Properties.

### 3. The Alleged Debtors' Failure to Adequately and Profitably Operate the Properties Prior to the Receiver's Appointment

The third factor—whether there has been mismanagement by the Alleged Debtor—also weighs in favor of granting the Motion. The MOM CA Debtors' had six months in their voluntary cases in Delaware to successfully operate their properties and reorganize their business. They proved incapable of accomplishing either outcome. The Beehler correspondence provides further evidence of this mismanagement.

Enterprise Bank commenced its State Court action because the Alleged Debtors could not pay off the obligations due and owing under Enterprise Bank's loans to them. This, despite the Alleged Debtors' continuing ability collect rents from tenants, These failures justify excusing the Receiver from the strictures of Section 543(a) and (b).

### IV. CONCLUSION

WHEREFORE, based upon the foregoing, Enterprise Bank respectfully requests that the Court grant this Motion and enter an order (i) excusing the Receiver from compliance with Section 543(a) and (b) of the Bankruptcy Code; (ii) permitting the Receiver to remain in place to fulfill his duties pursuant to the Receivership Order pending either the dismissal of these Cases or Enterprise being granted relief from stay to pursue its foreclosure of the Properties; and (iii) for such other and further relief as this Court may deem just and proper.

Dated: November 4, 2025

MIRMAN, BUBMAN & NAHMIAS

By: _____
Alan Nahmias, Esq.
Attorneys for *ENTERPRISE BANK & TRUST,
a Missouri Trust Company with Banking Powers*