HABERBUSH, LLP
DAVID R. HABERBUSH, ESQ., SBN 107190
VANESSA. M. HABERBUSH, ESQ., SBN 287044
LANE K. BOGARD, ESQ., SBN 306972
444 West Ocean Boulevard, Suite 1400
Long Beach, CA 90802
Telephone: (562) 435-3456
Facsimile: (562) 435-6335
E-mail: dhaberbush@lbinsolvency.com

Attorneys for Petitioning Creditors

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>Duplex At Sleepy Hollow, LLC,<br><br>Alleged Debtor and<br>Debtor-in-Possession<br><br>☐ Affects Duplex at Sleepy Hollow, LLC<br>☐ Affects 777 at Laguna, LLC<br>☐ Affects Cliff Drive Properties DE, LLC<br>☐ Affects Laguna Festival Center, LLC<br>☐ Affects 694 NCH Apartments, LLC<br>☐ Affects Retreat at Laguna Villas, LLC<br>☐ Affects 891 Laguna Canyon Road, LLC<br>☐ Affects Heisler Laguna, LLC<br>☐ Affects Sunset Cove Villas, LLC<br>☐ Affects Laguna Arts District Complex, LLC<br>■ Affects All Debtors | Case No. 8:25-bk-12892-SC<br><br>**Involuntary Chapter 11**<br><br>(Jointly Administered with Case Nos.<br>8:25-bk- 12893-SC<br>8:25-bk- 12894-SC<br>8:25-bk- 12895-SC<br>8:25-bk- 12896-SC<br>8:25-bk- 12898-SC<br>8:25-bk- 12899-SC<br>8:25-bk- 12900-SC<br>8:25-bk- 12901-SC and<br>8:25-bk- 12902-SC)<br><br>**PETITIONING CREDITORS' INITIAL RESPONSE TO MOTION FOR RELIEF FROM TURNOVER COMPLIANCE WITH 11 U.S.C. § 543 BY RECEIVER; MEMORANDUM OF POINTS AND AUTHORITIES; AND THE DECLARATION OF JASON MILLER IN SUPPORT THEREOF**<br><br>**Hearing Date**<br>Date: November 13, 2025<br>Time: 10:00 AM<br>Place: Courtroom 5C<br>411 W. 4th Street,, Santa Ana, CA 92701 |

Petitioning Creditors Coastline Loans, LLC ("Coastline"), Specialty DIP LLC ("Specialty DIP") and Vierergruppe Management, Inc. ("Vierergruppe"), Coastline Santa Monica Group, LLC ("Coastline SMG") (collectively with Coastline Loans, Specialty DIP, Vieregruppe and Coastline SMG, the "Petitioners") submit this Response to the Motion for Relief from Turnover Compliance with 11 U.S.C. § 543 by Receiver and Memorandum of Points and Authorities in Support Thereof (the "Motion") [Docket 17] filed by creditor Enterprise Bank ("Enterprise") and provides the following Memorandum of Points and Authorities in support thereof.

The Petitioning Creditors initiated the above-referenced involuntary chapter 11 bankruptcy cases (collectively, the "Cases") by filing involuntary petitions (collectively, the "Involuntary Petitions") against each of the Alleged Debtors in their respective Cases on October 15, 2025 (the "Petition Date") pursuant to Section 303 of title 11 of the United States Code (as amended, the "Bankruptcy Code") [See Docket 1 in each of the respective Cases]. By order dated October 17, 2025, this Court administratively consolidated the Cases sua sponte [Docket 6].

Only one week before the Petition Date, on October 7, 2025 (the "Appointment Date") the Superior Court of Orange County, California (the "State Court") entered its Receivership Order appointing the Receiver as an "asset receiver" over the Properties, which are assets of the respective Alleged Debtors and subject to Enterprise's liens, charging the Receiver with the duty of managing the operations of the Properties for Enterprise's benefit.

On November 5, 2025, 21 days after the Petition Date, Enterprise filed its Motion seeking relief under Bankruptcy Code Section 543(d)(1) to excuse the Receiver's compliance with his turnover obligations under Section 543. Enterprise argues that the interests of creditors in these Cases are better served by allowing the Receiver to control and manage the Properties free of the Bankruptcy Code's turnover requirements. Enterprise also states that it intends to "imminently" seek relief from the automatic stay to exercise its rights against the Properties, but has yet to do so. In support of its Motion, Enterprise seeks to predetermine the outcome of these Cases by imputing bad faith because of the Alleged Debtors' unsuccessful attempts to voluntarily reorganize in the Delaware Cases earlier this year, as well as this Court's recent dismissals of the Tesoro and Aryabhata involuntary cases filed by certain of the Petitioners in this Court.

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

F:\H A\Clients\ACTIVE\CVS - 1793\Bankruptcies\Duplex at Sleepy Hollow (12892)\Motion for Relief from Turnover\Response.wpd

2

THIS DOCUMENT PREPARED ON RECYCLED PAPER

1    Enterprise's Motion should be denied because it has failed to meet its burden of proof to
2    demonstrate that the interests of all creditors are better served by permitting the Receiver to continue to
3    manage the Properties during the pendency of these Cases. The Receiver is merely an asset receiver
4    serving Enterprise's interests as a secured lender and has no duty to the Alleged Debtors' unsecured
5    creditors or to the Alleged Debtors' potential reorganization that can result in a significant distribution
6    to the unsecured creditors. The Receiver has no familiarity with the Properties and assumed very little
7    control over the Properties during the week that he served as receiver prior to the Petition Date. Further,
8    valid questions exist as to whether the Receiver currently has any authority under the Receivership Order
9    to retain control of the Properties, as Section 21(c) of the Receivership Order compels the Receiver to
10   comply with Section 543 if Enterprise doesn't seek stay relief within ten days after notice of these Cases
11   - which Enterprise still hasn't done. Permitting the Receiver to retain management of the Alleged
12   Debtors' Properties will only serve to delay and hinder the Alleged Debtors' attempts to expeditiously
13   prepare and sell the Properties and maximize recoveries for all creditors - not just Enterprise. The
14   Alleged Debtors' bankruptcy estates (collectively, the "Estates") and their creditors and stakeholders
15   should not have to bear the dual burden of the delay required to bring the Receiver up to speed on the
16   management of the Properties, but also the expense of the Receiver in doing so as anticipated
17   administrative expenses of the Estates.
18   This Motion is supported by the Declaration of Jason Miller (the "Miller Declaration"), filed
19   concurrently herewith. This Motion is also supported by the following Memorandum of Points and
20   Authorities, the pleadings and papers on file herein, and any evidence and arguments this Court may
21   entertain in the hearing on this Motion or otherwise.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

24   Despite Enterprise's attempts to poison these Cases on every possible issue before the Petitioners
25   and Alleged Debtors are given any opportunity to speak, this Court should not relieve the Receiver (who
26   was only appointed a week before these petitions were filed and has nothing to actually turn over) of its
27   turnover obligations under Section 543. Enterprise's Motion does meet its burden of proof and does little
28   more than paint a cloud of wrongdoing and imminent doom from the Alleged Debtors' dismissed,

voluntary chapter 11 Delaware Cases, and the separate, dismissed, involuntary cases of the Alleged Debtors' affiliates that were brought by some of the Petitioners but involved different properties and different secured creditors.

Like the Delaware Cases, many chapter 11 cases filed with good intentions fail to pan out and are converted or dismissed when debtors can't get debtor-in-possession ("DIP") financing or a sale doesn't come together in time to get a plan confirmed. Alleged Debtors are not required to have every aspect of their plans predetermined and preapproved by all creditors prior to filing a petition. This is even more true for involuntary bankruptcies not initiated by the debtors themselves. Neither should the Court's findings and conclusions in the Tesoro and Arybahta cases be automatically imputed to these Cases, which involve a different set of petitioning creditors, secured creditors, and importantly, do not involve a purchjase and sale agreement between the Alleged Debtors and a bona fide, third party buyer for the Properties for a purchase price well in excess of Enterprise's secured claims.

Furthermore, there are substantial, additional assets of the Alleged Debtors' estates consisting of claims against its booking agent, MyLagunaStay ("MLS"), which has systematically stolen and commingled the Alleged Debtors' rents of their properties, which in large part caused the Alleged Debtors' financial troubles. The Alleged Debtors communicated its dispute with Enterprise and the Receiver, who nonetheless intend to continue using MLS to book rentals, only perpetuating the problem. Petitioners expect that Alleged Debtors will replace MLS and have their Estates pursue MLS through the enhanced powers under the Bankruptcy Code, providing a much more efficient means of recovering funds for unsecured creditors.

There is no nefarious scheme in filing these Cases, as supported by the Petitioners' disclosures filed with the Court on November 5, 2025 (the "Disclosures") [Docket 5]. The nefarious connections alleged by Enterprise do not exist and should not taint otherwise valid involuntary bankruptcies that will protect the interests of unsecured creditors by generating tens of millions of dollars in excess of Enterprise's secured claims from the proposed sale of the Properties collateral and the liquidation of the Alleged Debtors' other claims and assets.

The mere appointment of the Receiver after Enterprise's relief from stay (consented to by the Alleged Debtors in the Delaware Cases) combined with allegations imputed from Enterprise's

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

mischaracterizations and other cases that did not involve Enterprise, are not grounds for continuing to allow the Receiver to manage the assets during these Cases. The focus of the Section 543(d)(1) analysis is on the best interests of all creditors. The creditors best interests of are not served by the inherent delay and added expense of a fiduciary who has virtually no information or familiarity with or existing control over the Properties, especially when a sale is imminent and the need for stable, competent management is needed to get to a quick sale.

Lastly, valid questions exist as to whether the Receivership Order permits the Receiver to do anything other than comply with turnover because Enterprise has not yet sought relief from the automatic stay.

## II.    FACTUAL BACKGROUND

Effective November 6, 2025, Alleged Debtors entered into a purchase and sale agreement between themselves and Special Assets Laguna, LLC. The agreed-upon purchase price is $102 million which creates an equity cushion for Enterprise of more than $22 million. It appears that the offer is bona fide and that the buyer can perform within a reasonable period of time.

## III.    LEGAL ARGUMENT.

### A.    Enterprise's Motion Should Be Denied Because it Doesn't Meet its Burden of Proof.

Section 543(d)(1) provides the grounds under which the Court should consider excusing the Receiver from his turnover obligations under Section 543, stating:

> (d) After notice and hearing, the bankruptcy court-
>
> (1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property...

11 U.S.C. § 543(d)(1).

Under the Bankruptcy Code and applicable case law, Enterprise bears the burden of proving that it is entitled to relief under Section 543(d)(1). Because section 543 establishes specific default rules generally favoring the turnover of assets to the trustee or debtor in possession in order to centralize the administration of the bankruptcy estate and to further reorganization policy, the party requesting excusal from turnover bears the burden of establishing that compliance should be excused. The burden then

shifts to the debtor to show why turnover is appropriate. Thus, the general rule requires turnover while retention of property is the exception. Turnover is favored because a substantial weight is added to the debtor's burden of attempting to reorganize and to promulgate an acceptable plan of reorganization if debtor cannot have access to all of its assets during its initial breathing spell.

5 Collier on Bankruptcy 543.05 (16th 2023) (footnotes and quotation omitted); see *In re Franklin*, 476 B.R. 545, 551 (Bankr. N.D. Ill. 2012) (moving party's burden is the preponderance of evidence standard); see also *In re Northgate Terrace Apartments, Ltd.*, 117 B.R. 328, 332-33 (Bankr. S.D. Ohio 1990) ("The turnover provisions of 11 U.S.C. § 543 are part of the statutory expression of the Congressional preference that a Chapter 11 debtor be permitted to operate and control its business during the reorganization process."). "Section 543(d) cases are fact intensive, turning upon whether the assets of the particular debtor should be administered by the existing custodian or returned to the debtor." *In re Uno Broadcasting Corp.*, 167 B.R. 189, 200 (Bankr. D. Ariz. 1994) (citing *In re Dill*, 163 B.R. 221 (E.D.N.Y. 1994)).

Enterprise's Motion is based wholly on implications from other proceedings that involve distinctly different debtors and creditors procedural postures and are more akin to a de facto motion to dismiss, but Enterprise isn't seeking dismissal, it is seeking to relieve its Receiver from his Section 543 turnover obligations. The focus of the Court's 543(d)(1) analysis is on "the assets of the particular debtor" and administration of those assets by the "existing custodian." Enterprise makes little mention of anything particular to the instant Cases other than that the Alleged Debtors defaulted on their loans to Enterprise, the Delaware voluntary cases were unsuccessful, the Receiver was appointed by the State Court and the Petitioners filed their Petitions prior to Enterprise's scheduled foreclosures of the Properties. The Motion completely glosses over any explanation for why this Receiver's management of the Properties serves the best interests of all creditors in these Cases.

**B.    Enterprise's Arguments Do Not Satisfy *Orchards* and Other Relevant Factors.**

The Motion cites *In re Orchards Village Investments, LLC*, 405 B.R. 341, 351-52 (Bankr. D. Or. 2009), for the factors the Court can consider in evaluating relief from Section 543. *Orchards* identifies three factors for the Court to consider determining the interests of all creditors for Section 543(d)(1) exemption: "(1) whether there will be sufficient income to fund a successful reorganization; (2) whether

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

the debtor will use the property for the benefit of its creditors; and (3) whether there has been mismanagement by the debtor." *Orchards*, 405 B.R. at 353 (quoting 5 Collier on Bankruptcy 543.05 at 543-12 (15th ed. rev.2009)). However, these three factors are not exclusive. See id. Section 543(d) is a "modified abstention provision", so bankruptcy courts' considerations relevant to a decision to abstain in favor of another forum are also relevant to determining whether to excuse turnover under subsection 543(d)(1). See *Uno Broadcasting* at 200 (citing *Constable Plaza Assocs.*, 125 B.R. 98, 103 (Bankr. S.D.N.Y. 1991)). The *Orchard* factors and these additional factors are addressed below, but in any case, the future of these Cases should not be predetermined now based on implications from other cases, especially before the Order for Relief has been entered and the Alleged Debtors have not yet appeared.

1. ***Orchards* Factor # 1 - Whether There Will Be Sufficient Income to Fund a Successful Reorganization.**

The first *Orchards* factor looks at whether there will be sufficient income to fund a successful reorganization. It is too early in these Cases to make this determination. The Alleged Debtors have presented a PSA that will pay Enterprise in full and provide distribution to unsecured creditors, and the Estates have claims against MLS that can be liquidated for further distribution. Petitioners believe the Alleged Debtors are working on DIP financing to fund these cases to a sale and should be given a fair opportunity to do so. Management and control of the Properties is an element (although not the determining element at this point in time) of the Alleged Debtors ability to fund this reorganization. Enterprise heavily emphasizes the dismissal of the Delaware Cases as predetermining the outcome of this case, further inferring that Enterprise obtained relief from the stay and that the Delaware Cases were dismissed because of bad faith or mismanagement. There were several factors at play in the Delaware Cases, largely because of interference with the proposed $55 Million sale of the Tesoro property. The failed Tesoro sale impacted the availability of further DIP financing, which impacted the ability to sell other assets, including the Properties. The MOM Alleged Debtors conceded that they could not continue in Chapter 11 without DIP financing and offered Enterprise and other creditors relief from the automatic stay.

These Cases are not the Delaware Cases, despite Enterprise's best efforts to characterize them

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

F:\H_A\Clients\ACTIVE\CVS - 1793\Bankruptcies\Duplex at Sleepy Hollow (12892)\Motion for Relief from Turnover\Response.wpd    7    THIS DOCUMENT PREPARED ON RECYCLED PAPER

as such. Indeed, these Cases are notably free from the collateral impact of issues with other secured creditors and assets. The Alleged Debtors have a PSA to sell the Properties for an amount well in excess of Enterprise's secured debt and are locating DIP financing that isn't tied to any Properties other than those secured by Enterprise's liens. Enterprise argues that the MOM Alleged Debtors were unable to secure a buyer for the Properties and that the Alleged Debtors "have done nothing in the two months since." Enterprise's assumption is not correct, as the Alleged Debtors have produced the PSA that they have worked tirelessly to obtain over the past 9 months. The Alleged Debtors' significant efforts have finally borne fruit that can accomplish what the MOM Alleged Debtors set out to obtain in the Delaware Cases.

**2.    *Orchards* Factor # 2 - Whether the Debtor Will Use the Turned over Property for the Benefit of its Creditors.**

The second *Orchards* factor focuses on whether the Alleged Debtors will use the Properties for the benefit of creditors. The Alleged Debtors, unlike the Receiver, will unequivocally use the Properties for the benefit of all creditors. Petitioners believe the Alleged Debtors will operate the Properties consistent with their fiduciary duties as debtors-in-possession and subject to the Court's oversight and have a mandate to get approval of and consummate the sale of the Properties for the substantial benefit of all creditors. The Receiver may be bound by the Court's jurisdiction and automatic stay, but the Receiver's mandate under the Receivership Order is only to act for the State Court and look out for Enterprise's interests.

This is evident in the fact that Enterprise's Motion doesn't allege facts addressing the second *Orchards* factor, but vaguely argues: "based on the history of the Alleged Debtors, there is a significant risk that the Properties will continue to loose [sic] value". Enterprise provides no evidence that the Alleged Debtors at any point have not used the Properties to benefit their creditors and will not do so in these Cases. Further, while not a consideration under *Orchards*, Enterprises presents no evidence of lost value. To the contrary, the Alleged Debtors have obtained a PSA that will pay Enterprise in full and provide a significant distribution to unsecured creditors.

There can be little doubt that the Alleged Debtors will use the Properties for the benefit of all creditors in these Cases. Undoubtedly the Alleged Debtors will seek approval of the sale and will

distribute the proceeds to pay all creditors, including the unsecured creditors, and is fully incentivized to manage and operate the Properties under the supervision of this Court to make sure that the sale is approved and closes in accordance with the PSA's terms. Enterprise's Receiver has no incentive other than to advance Enterprise's interests, which are clearly to foreclose on the Properties and presumably keep the substantial equity that would go to unsecured creditors in these Cases for itself.

3.  ***Orchards* Factor # 3 - Whether the Debtors Have Mismanaged the Properties Prior to Filing the Petitions.**

The last *Orchards* factor focuses on the Alleged Debtors' mismanagement of the Properties prior to the filing of the Petitions. The Alleged Debtors have not mismanaged the Properties prior to these Cases. The Alleged Debtors have experienced cash shortfalls common to all hotel and hospitality businesses since the COVID pandemic and have had to make tough choices on how to allocate limited funds. This is an unfortunate circumstance common to many debtors who file for bankruptcy, but it is not "mismanagement". See *Northgate Terrace Apartments*, 117 B.R. at 332 ("The existence of prepetition defaults in payment to a lender which occurred prior to any action by the lender to secure possession of future rents is not sufficient to entitle a receiver to ignore the mandate of § 543(a) of the Bankruptcy Code and refuse to turn over a debtor's property.").

Further, the Alleged Debtors have discovered over the last several months that MLS has been converting their rents and commingling them with MLS' own funds. The Alleged Debtors sought to remove MLS as the Alleged Debtors' booking agent prior to the Receivership and bring claims against them to recover the stolen funds. The appointment of the Receiver gave MLS the perfect opportunity to continue their fraudulent activity, as the Receiver intends to continue using MLS while it gets up to speed. It should come as no surprise that MLS' attorney, Anne Beehler, cited by Enterprise in its Motion as evidence of the Alleged Debtors' alleged wrongdoing, would run to the Receiver for protection while MLS also sought to continue providing services to the Receiver. The Alleged Debtors will immediately remove MLS as booking agent and continue to pursue the Estates' claims against MLS, which will increase distributions to unsecured creditors. Allowing the Receiver to preserve the status quo through MLS during this case will only perpetuate MLS' mismanagement of the Properties.

4.  **Other Factors Considered by Courts under Section 543(d)(1).**

*Orchards*, which is not controlling precedent for this Court, cited three factors listed in 5 Collier on Bankruptcy (2019), but Collier also includes several other factors that have been considered in persuasive opinions in other jurisdictions. Relevant additional factors include whether turnover would be injurious to creditors and the fact that the bankruptcy automatic stay has deactivated the receivership action. See 5 Collier on Bankruptcy 543.05 at 543-12; Dill at 332; Uno Broadcasting at 200; Constable Plaza Assocs. at 103; In re Packard Square LLC, 575 B.R. 768, 778 (Bankr. E.D. Mich. 2017). "Regardless of what factors are used to aid the court in its decision [to excuse or require turnover by a pre-petition custodian], the paramount and sole concern is the interests of all creditors." *Packard Square LLC*, 575 B.R. at 778 (emphasis added).

Permitting the Receiver to move forward with managing the Properties impairs not only the Alleged Debtors' ability to reorganize in the broader sense, but also the creditors who are essential to ongoing stabilization of operations and ensuring that the sale is successful. The Receiver has little to no familiarity with the Properties and hasn't taken any action other than to obtain information and get up to speed on the Properties and their operations. His own affidavit confirms that he hasn't obtained a Tax ID for the receivership estate or set up a bank account in which to deposit rents. Out of respect for the stay, and consistent with the State Court's own Receivership Order, he hasn't done anything with the Properties in the month since the Petition Date. The length of time that a receiver has had control of the assets and its efforts taken in the receivership are significant considerations for courts to weigh in their analyses. See *Packard Square* at 779 ("[B]ankruptcy courts have considered the length of the time that the receiver has acted under a receivership order, and what, if anything, the receiver has done, and the impact of these considerations on the other relevant factors.")(internal citations omitted). Not only will delay and confusion result from allowing the Receiver to start managing the Properties at this point, the Estates will likely be asked to fund the fees and expenses of the Receiver and his professional as administrative expenses.

Lastly, the automatic stay operates to stay the State Court proceeding that the Receiver is inherently tied to. In spite of relief from Section 543, the Receiver's duty and loyalty is to the State Court and Enterprise - not the Alleged Debtors or their unsecured creditors. The Receiver is not the debtor-in-possession and doesn't possess the powers given to debtors-in-possession under the

Bankruptcy Code that are instrumental to reorganizations. Presumably, the Receiver will be faced frequently with questions of what his duties are in this situation that may require constant clarification from this Court or the State Court.

Notably, the Receiver and Enterprise are already in violation of the Receivership Order for delaying their request for turnover, as the Receivership Order, while providing the Receiver with some guidance on awaiting directions from this Court pending Enterprise's request for stay relief or from Section 543, nonetheless compels the Receiver to turn over under Section 543 if Enterprise fails to seek stay relief within 10 days after receiving notice of the bankruptcy. See Docket 18, Receivership Order, § 21(c), Donnell Decl. Ex. 1. Enterprise waited 21 days after the Petition Date to file this Motion and has yet to seek relief from the automatic stay. While the Receivership Order may not be binding as to this Court's determination of Enterprise's requested relief, a material question already exists as to the Receiver's authority from the State Court to continue managing the Properties even if this Court grants Enterprise's Motion. These complications do not serve the creditors' interest in these Cases.

## CONCLUSION

It is apparent from the Motion that Enterprise has failed to meet its burden of demonstrating relief from the turnover requirements of Section 543. It cannot meet that burden merely through citing other cases that are materially distinct from these Cases, especially at this very early stage of these involuntary proceedings. Enterprise cannot show that allowing the Receiver, who has done nothing with respect to the Properties prepetition and has questionable authority from the State Court to do anything other than comply with turnover at this point, is in the interests of all of the creditors in these Cases. Based upon the foregoing, the Petitioners respectfully request that the Court deny Enterprise's Motion and grant such other and further relief as the Court deems just and proper.

Dated: November 12, 2025

Respectfully submitted,

HABERBUSH, LLP

By: _____
DAVID R. HABERBUSH, ESQ., Attorneys for Petitioning Creditors

## DECLARATION OF JASON MILLER

I, Jason Miller, declare as follows:

1.    I am over the age of 18 years old. I have personal knowledge of the facts stated herein, and if called upon to testify to such facts I could and would testify competently thereto. I make this declaration in support of the Response to Motion for Relief from Turnover Under and Compliance With 11 U.S.C. § 543 By Receiver (the "Response") filed in the above-captioned involuntary chapter 11 bankruptcy cases (collectively, "Bankruptcy Cases" or "Cases"), filed by the Petitioning Creditors.

2.    I am the duly-authorized signatory of the Alleged Debtors with respect to that certain Purchase and Sale Agreement dated November 6, 2025 between the Alleged Debtors, as sellers, and Special Assets Laguna, LLC, as buyer, of the Alleged Debtors' Properties (the "PSA"). A true and correct copy of the PSA is attached hereto as Exhibit A.

3.    I have at all relevant times been personally involved in the marketing of the Properties and the negotiation of the PSA, which is a good faith, arms' length offer by the Buyer to purchase the Properties from the Alleged Debtors for a purchase price of $102,000,000, as more specifically set forth in the PSA.

4.    The Buyer is not an affiliate of the Alleged Debtors or related, directly or indirectly, to the Alleged Debtors or their principals.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING IS TRUE AND CORRECT.

Executed this 12th day of November 2025, at _____, CA.

_____
Jason Miller

THIS DOCUMENT PREPARED ON RECYCLED PAPER

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 444 West Ocean Boulevard, Suite 1400, Long Beach, CA 90802

A true and correct copy of the foregoing document entitled: **PETITIONING CREDITORS' INITIAL RESPONSE TO MOTION FOR RELIEF FROM TURNOVER COMPLIANCE WITH 11 U.S.C. § 543 BY RECEIVER; MEMORANDUM OF POINTS AND AUTHORITIES; AND THE DECLARATION OF JASON MILLER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 12, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Michael E Bubman    mbubman@mbn.law, aacosta@mbnlawyers.com
- Steven T Gubner    sgubner@bg.law, ecf@bg.law
- David R Haberbush    dhaberbush@lbinsolvency.com, ahaberbush@lbinsolvency.com,abostic@lbinsolvency.com,vhaberbush@lbinsolvency.com,haberbush.assistant@gmail.com,jborin@lbinsolvency.com,lbogard@lbinsolvency.com
- Sam Maralan    sm@maralanlaw.com
- Kristin T Mihelic    kristin.t.mihelic@usdoj.gov
- Alan I Nahmias    anahmias@mbn.law, jdale@mbn.law
- David L Prince    dlp@redchamber.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- David B Zolkin    dzolkin@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On **November 12, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Duplex At Sleepy Hollow, LLC
520 Newport Center Dr Ste 480
Newport Beach, CA 92660

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 12, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 12, 2025 | Alexander S. Bostic |  |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                    F 9013-3.1.PROOF.SERVICE

**The following have been served via electronic mail at 11:59 am:**

Alan Nahmias
anahmias@mbn.law

Michael E. Bubman
mbubman@mbn.law

**The following have been served via personal delivery:**

Scott C. Clarkson, JUDGE
United States Bankruptcy Court
411 West Fourth Street
Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                     F 9013-3.1.PROOF.SERVICE